UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS KLEIN,

                Plaintiff,                Civil Action No. 17-11192
                                          Honorable Nancy G. Edmunds
v.                                    Magistrate Judge David R. Grand

UNIVERSITY OF MICHIGAN,
BOARD OF REGENTS, et al.,

                Defendants.

_____

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS [15], AND TO DISMISS PLAINTIFF'S COMPLAINT**

*Pro se* plaintiff Dennis Klein ("Klein") brings this action against the University of Michigan Board of Regents, the University of Michigan Medical Center, and eight University of Michigan employees in their "personal and professional capacities": Jim Harvey ("Harvey"), Bob Harris ("Harris"), Bill O'Dell ("O'Dell"), Chris Schlaps ("Schlaps"), Maria Brussolo ("Brussolo"), Luis Mello ("Mello"), Denise Siebert ("Siebert"), and Cindy Quine ("Quine") (collectively, the "Defendants"). (Doc. #13 at 2). This case was referred to the undersigned for management, hearing, and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #8). Presently before the Court is Defendants' motion to dismiss, filed on October 13, 2017. (Doc. #15). For the reasons discussed below, **IT IS RECOMMENDED** that the motion to dismiss be **GRANTED**, and that Klein's complaint be **DISMISSED**.

## I.      <u>Factual Background</u>

Beginning in 2008, Klein was an employee in the University of Michigan Medical Center's Facility Planning and Development Department ("FPD").  (Doc. #13 at ¶ 1).  The Defendants are all affiliated with the FPD in some capacity.  As discussed in more detail below, in his operative second amended complaint, Klein asserts numerous claims arising out of his employment, including intentional infliction of emotional distress ("IIED"), invasion of privacy, negligent hiring and retention, failure to provide a safe workplace, breach of the implied covenant of good faith and fair dealing, violations of 42 U.S.C. §§ 1983 and 1985, a violation of HIPPA, breach of contract, and loss of consortium.  (Doc. #13).[1]  Klein requests punitive and compensatory damages totaling $8,000,000.00.  *Id.*

On October 13, 2017, Defendants filed the instant motion to dismiss (Doc. #15), which Klein responded to on November 8, 2017.  (Doc. #17).  Defendants did not file a reply.  At the conclusion of oral argument on January 22, 2018, in response to arguments made by Klein, the Court offered him the opportunity to provide case law to support his contention that a state university's mere receipt of federal funds acted as a waiver of its Eleventh Amendment immunity for § 1983 suits.  Klein did not file any such brief, though the Defendants filed a supplemental brief addressing this issue in support of their motion to dismiss.  (Doc. #21).

Before analyzing Defendants' arguments, the Court will briefly describe Klein's allegations against them.

---

[1] This second amended complaint represents Klein's third bite at the apple.  He filed his initial complaint on April 17, 2017, and then an amended complaint on July 31, 2017, which did not assert any new claims or requests for relief.  (Docs. #1, #4).  Defendants filed a motion to dismiss on August 14, 2017.  (Doc. #7).  On September 6, 2017, Klein filed an "Answer in Opposition [to] Defendant's Motion to Dismiss and Motion Seeking Leave to Amend Complaint."  (Doc. #9).  The Court granted this motion, and on September 29, 2017, Klein filed his second amended complaint that is the subject of Defendants' instant motion.  (Doc. #13).

### a. Allegations against the University of Michigan Board of Regents and the University of Michigan Medical Center

The University of Michigan Board of Regents and the University of Michigan Medical Center are listed in several claims within Klein's complaint.  These defendants are mentioned under counts for negligent hiring and retention, failure to provide a safe workplace, breach of the implied covenant of good faith and fair dealing, a violation of HIPPA, breach of contract, violations of 42 U.S.C. § 1983 and § 1985, and loss of consortium.  (Doc. #13 at 25-31).  Despite being listed under these counts, Klein provides no details of what these entities allegedly did to warrant liability, and instead states in a conclusory fashion that they should be held liable.  *Id.*

### b. Allegations against Harvey

The majority of Klein's allegations relate to his supervisor, Harvey.  Klein alleges that starting in 2008, Harvey would "harass, belittle, and mentally torture" him.  *Id.* at ¶ 2.  This reportedly began at the onset of Klein's employment at the FPD.  *Id.*  Klein alleges that this first took the form of constant questioning of him about his whereabouts during the workday:

> Harvey was outrageously aggressive and interrogating, and used passive-aggressive and overtly aggressive mannerisms.  This act of workplace bullying was health-harming mistreatment of [Klein] with Harvey as perpetrator.  It was abusive conduct that is threatening, humiliating, and intimidating, and work interference—sabotage—which prevented work from getting done, and verbal abuse.

*Id.* at ¶ 6.  Klein explains that no other employees were questioned about their whereabouts in a similar fashion, and alleges that Harvey treated other FPD employees differently than he did Klein.  Specifically, Klein alleges that Harvey "refused to help pursue [Klein's] multiple computer update/upgrade requests" (*Id.* at ¶¶ 49-50), and would "scold" him for being disruptive while talking and laughing too loudly at work, even though other employees "raised a similar disturbance." *Id.* at ¶ 19.

Klein alleges that around August 2013, he met with Harvey for a "negatively-toned" employee evaluation in which Harvey was "egregiously confrontational, and inaccurate, causing Plaintiff great emotional distress, in its use of fear and intimidation. It had no basis in fact, and was health-harming . . . ." *Id.* at ¶ 88. At a later meeting around September 2013, after Klein handed Harvey an "improvement list," Harvey allegedly became "enraged and belligerent." *Id.* at ¶ 99. Harvey allegedly slammed his fist on his desk, which Klein characterizes as an "act of workplace violence." *Id.* Klein further avers that after he was twice given an award from appreciative clients, Harvey never offered congratulations, "as if it never happened." *Id.* at ¶¶ 118, 122-123. Last, Harvey is also mentioned in regard to a meeting which took place around February 2014, where Harvey allegedly placed on his Microsoft Outlook calendar, "Dennis' performance improvement review." *Id.* at ¶ 129. As Klein confirmed during oral argument, the contents of the review were never posted, and all that was posted was the mere existence of a meeting. Nevertheless, Klein labels this posting "public humiliation," which allowed those at the University "and some outside agencies" to presume he was a "bad employee," and that "[w]ord was out that [Klein] was now target of Harvey's punitive action." *Id.*

### c. **Allegations against Harris**

Klein lists several allegations against Harris who is a director at the FPD office. *Id.* at ¶ 21. Klein alleges that after he inquired via email about how vendors are paid through the University, Harris called a meeting which "became a hostile-toned interrogation examination of [Klein's] email's intent, implying malfeasance, or dereliction on the part of [Klein] . . . this act of workplace bulling was health-harming mistreatment . . . it was abusive conduct that was threatening, humiliating, and intimidating, and work interference, and verbal abuse." *Id.* at ¶¶ 20, 23. Klein does not detail what specific statements or behaviors led him to describe this

4

meeting in such extreme language.  In a later meeting taking place around April 2013, Harris reportedly "confronted [Klein] belligerently, stating that 'he perceived [Klein's] method of executing [a work] project to be inferior and substandard.'"  *Id.* at ¶ 105.  Finally, Klein alleges that after he asked Harris who he should go to when a certain type of work problem arises, Harris grew angry and told him "brusquely" who to seek out in such situations.  *Id.* at ¶ 108.  Klein alleges this meeting left him so distressed that he could not finish work that day or come in the following day.  *Id.* at ¶ 109.  Klein asserts that Harris is an "anger-based, fear-instilling terrorizing manager" who has "cronies" who protect him.  *Id.* at ¶¶ 149-150.

### d.  Allegations against O'Dell

Defendant O'Dell works in the same office as Klein, and apparently serves as Harvey's supervisor.  *Id.* at ¶ 109.  O'Dell is mentioned to have:

> accomplished workplace bullying by:  swearing and shouting at [Klein] and other verbal abuse; singling out [Klein] with different policies and standards;  ignoring or dismissing [Klein's] work or contributions; offensive conduct or behavior that embarrassed, humiliated, or threatened [Klein], constant targeted criticism or gossip involving [Klein]; and work interference that sabotages [Klein's] work product.

(Doc. #13 at 24).  Only one instance of such behavior by O'Dell is set forth in the complaint, where it is alleged that in January 2014, O'Dell "displayed inappropriate disruptive behavior with raised angry voice index finger pointing at [Klein]."  *Id.* at ¶ 119.  No other information of this alleged incident is provided.  The only other mention of O'Dell comes from another employee who reportedly told Klein that O'Dell has always "hated" him and that O'Dell "gets Harvey to enforce this abusive conduct and calculated mode of operation."  *Id.* at ¶¶ 131-134.

### e.  Allegations against Schlaps, Brussolo, Mello, Siebert, and Quine

The remaining defendants are mentioned scarcely in the complaint.  Schlaps is mentioned only once, in regard to an undescribed email that he sent to Klein which apparently included

"intentional[ly] fabricated allegations against [Klein], with an intent and effect of being health-harming mistreatment . . . it was abusive conduct that was threatening, humiliating, and intimidating, and written abuse by electronic mail." *Id.* at ¶ 142.  The details of this email are not disclosed in any capacity.   Brussolo works for the in-house IT department, and the allegations against her solely stem from her role in helping replace Klein's work computer, which Klein avers was insufficiently punctual.  *Id.* at ¶¶ 36-55.   Likewise, Mello is only mentioned for his alleged inability to resolve an IT problem relating to Klein's computer.  *See id.* at ¶¶ 56-59.   Siebert's actions are not brought into question in this case, with the exception that after Klein sent her an email asking her how vendors are paid, she forwarded Klein's email to Harris.  *Id.* at ¶¶ 20-21.   Cindy Quine is a Human Resources representative who is alleged to have "failed/refused to respond to either of [Klein's] calls for help" after Klein expressed frustration over problems at the workplace.  *Id.* at ¶ 112.   No other details about Quine's role in this claim are presented in the complaint.

### f.   Klein's Alleged Injuries

Klein alleges that on April 17, 2014, he suffered a stroke at work while responding to an email he received from Schlaps at 10:30 a.m.  *Id.* at ¶¶ 142-143.   Klein suggests that he did not seek medical treatment at the onset of his stroke, but "went [to the emergency room] at the end of the workday rather than during the day to avoid Harvey's continued retaliation and harassment."  *Id.* at ¶ 144.   Though Klein does not bring any claims relating to his post-stroke treatment at the office, he avers that Harvey put pressure on his medical caseworker to force Klein to answer work-related questions from his residence, leading Klein to conclude that his "medical matter was handled inappropriately, in retribution."  *Id.* at ¶ 147.

## II.    <u>Standard of Review</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

7

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

## III.   Analysis

Defendants move to dismiss each of Klein's claims for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, they argue that governmental immunity applies to both the alleged state law tort claims and federal claims. For the reasons discussed below, Defendants' motion to dismiss should be granted.

### A.  State Law Tort Claims

#### 1.  Klein Failed to State a Claim as a Matter of Law

##### a.  Intentional Infliction of Emotional Distress

In Count 1 of his complaint, Klein asserts an IIED claim against all of the Defendants, but only references conduct by Harvey and O'Dell. After reciting the elements of an IIED claim, Klein states that he sustained injuries "by the direct actions of Defendant Harvey, the direct collusion of Defendant O'Dell, and the conspiratorial participation and collusion of the remaining defendants." (Doc. # 13 at 24). In the ensuing paragraph, Klein alleges:

> Defendants Harvey and Odell accomplished workplace bullying by: swearing and shouting at [Klein] and other verbal abuse; singling out [Klein] with different policies and standards; ignoring or dismissing [Klein's] work or contributions; offensive conduct or behavior that embarrassed, humiliated, or threatened [Klein], constant targeted criticism or gossip involving [Klein]; and work interference that sabotages [Klein's] work product.

8

*Id.*

Under Michigan law, the elements of a claim for IIED are (1) extreme or outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Graham v. Ford*, 237 Mich. App. 670 (1999) (citing *Haverbush v. Powelson*, 217 Mich. App. 228 (1996)). In ruling on such a claim, "it is initially for the [trial] court to determine whether the defendant's conduct reasonably may be regarded as so extreme and outrageous as to permit recovery." *Doe v. Mills*, 212 Mich. App. 73 (1995). In order to sustain a claim of IIED, a plaintiff must complain of conduct that meets a particularly high standard:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980). Importantly, "[i]nsults, indignities, threats, annoyances, or petty oppressions are insufficient as a matter of law to be considered extreme and outrageous conduct." *Graham*, 237 Mich. App. at 675. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46, cmt. j.

While the non-physical "bullying" conduct alleged against the Defendants, if true, would be far from laudable, such behavior does not meet the "extreme and outrageous" threshold necessary to sustain this claim. As Defendants correctly point out, courts have found that far more severe conduct did not constitute the "extreme and outrageous" conduct required to state an

IIED claim.  For example, in *Hilden v. Hurley Med. Ctr.*, 831 F. Supp. 2d 1024, 1047 (E.D. Mich. 2011), *aff'd*, 504 F. App'x 408 (6th Cir. 2012), the court dismissed an IIED claim brought against an employer who allegedly chased an employee through the halls of a hospital while shouting and yelling.  *Id.*  In *Meek v. Michigan Bell Tel. Co.,* 193 Mich. App. 340, 342-343 (1991), the court dismissed an IIED claim arising from workplace bullying that allegedly involved extensive sexual and religious harassment, in addition to persistent threats of discipline, insults about the quality of the plaintiff's work, and slurs relating to her physical stature. Because Klein has not alleged conduct which reasonably can be characterized as "extreme and outrageous" under the law, his IIED claim fails as a matter of law and should be dismissed.

### b.  Invasion of Privacy

In Count 2 of his complaint, Klein alleges that a "tort of invasion of privacy" occurred when "Harvey 'announced' to the Outlook-accessible world that [he] was a 'bad employee' requiring a 'corrective performance review' on the publicly-viewable Outlook calendar."  (Doc. #13 at 25).  While Klein lists in his complaint four separate theories of an invasion of privacy claim (*id.*), he does not specify which one he is proceeding under, though it appears that he is proceeding under a "false light claim."  *See* Restatement Torts, 2d, § 652 E, cmt.b. ("The interest protected by this section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position.").

In *Duran v. Detroit News* 200 Mich. App. 622, 631-632 (1993)*,* the court explained that to state a claim for false-light invasion of privacy a "plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or

beliefs that were false and placed the plaintiff in a false position." *Id.* Bearing these elements in mind, there are several problems in regard to Klein's invasion of privacy claim.

First, any posting of the fact that Klein was scheduled for a performance review does not rise to the level of "broadcasting" that courts have previously recognized. Posting a performance review on a Microsoft Outlook calendar does not meet the requisite level of broadcasting because the publication must involve "a communication to so many persons that the matter is substantially certain to become public knowledge." *Lansing Ass'n of Sch. Adm'rs v. Lansing School Dist. Bd. of Educ.*, 216 Mich. App. 79, 89 (citing Restatement Torts, 2d, § 652D, p. 384). While Klein alleges that his co-workers and "some outside agencies" may have been able to see this for some short period of time, courts have held that "small or discrete groups such as a person's colleagues are not a large enough audience" to sustain a false light claim. *Geiling v. Wirt Fin. Servs., Inc.,* No. 14-11027, 2014 WL 8473822, at *48 (E.D. Mich. Dec. 31, 2014*), report and recommendation adopted in part*, No. 14-CV-11027, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015), *aff'd*, No. 15-1393, 2017 WL 6945559 (6th Cir. June 8, 2017) (citing *Yoder v. Ingersoll–Rand Co.*, 172 F.3d 51, 1998 WL 939885, at *2 (6th Cir. 1998)).

Further, Klein fails to properly allege that "posting" his scheduled performance review to an Outlook calendar was "unreasonable and highly objectionable" or placed him in a "false position." Given that the alleged posting merely noted that Klein was subject to a review, Klein has failed to explain 1) how this was unreasonable and highly objectionable, and 2) how this placed him in a false position. Klein summarily states in his complaint that the simple posting of his performance review's date and time on Microsoft Outlook leads to the conclusion that he was a "bad employee requiring a corrective performance review." (Doc. #13 at 25). But there is no basis for this presumption other than Klein's own conjecture, which is insufficient to state a

11

claim for relief.  *Bredesen*, 500 F.3d at 527.  While the simple posting of a performance review to a calendar is in all likelihood not objectionable, it is certainly not "*highly* objectionable." *Duran*, 200 Mich. App. at 631-632 (emphasis added).   Performance reviews are a common aspect of employment—often a mandatory one regardless of one's performance or position—and Klein has failed to argue anything otherwise.  Likewise, Klein fails to mention any way in which this posting forced him into a false position, rendering his claim without merit.  *Fronning v. Jones,* 77 F.3d 482, 1996 WL 82512, at *2 (6th Cir. 1996) (plaintiff must prove a statement was false in order to succeed on a false light claim).  For these reasons, Klein's invasion of privacy claim fails as a matter of law.

### c.  Negligent Hiring and Retention

In Count 3 of his complaint, Klein lists the elements of a negligent hiring and retention claim, and states that "Defendants University of Michigan, the Medical Center, and Defendant Harris, were negligent in their hiring, and retention, of Defendant Harvey and O'Dell."  (Doc. #13 at 26).  To sustain this type of claim, a plaintiff must identify "the appropriate standard for hiring, retaining, or supervising" the relevant class of employee, *Sanders v. Southwest Airlines Co.*, 86 F. Supp. 2d 739, 746 (E.D. Mich. 2000), as well as allege facts "demonstrating that the employer knew or should have known of the employee's propensity to engage in the challenged conduct."  *Isely v. Capuchin Province*, 880 F. Supp. 1138, 1146 (E.D. Mich. 1995).

Here, Klein fails to satisfy the first prong by failing to identify the standard he believes these defendants violated.  Indeed, in his reply he merely states that he "can and will point to the University's articulated Employment Policies, after obtaining time-relevant copies of those policies during discovery."  (Doc. #17 at 13).  At the hearing as well, Klein candidly admitted that he required discovery to even know what to plead.  But this simply misapprehends the

requirements for overcoming a motion to dismiss; as noted above, it is the plaintiff's responsibility to plead, *in his complaint*, "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Conclusory assertions that merely track a claim's elements are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted). Therefore, this claim fails as a matter of law and should be dismissed.

### d.  Failure to Provide a Safe Workplace

In Count 4 of his complaint, Klein avers that the "University of Michigan, the Medical Center, and Defendant[]s Harris and Harvey failed to provide a safe workplace; and the other named defendant[]s conspired to make the workplace unsafe by their actions and inactions." (Doc. #13 at 26).  As Klein cites in his complaint, under the Michigan Occupational Safety and Health Act, "an employer has a statutorily imposed duty to make the workplace safe for its employees." *Id.* (citing MCL § 408.1001 *et seq*.)  This Act requires employers to "[f]urnish to each employee, employment and a place of employment which is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee." *Id.*

Here, the only "serious physical harm" Klein alleges is the stroke he suffered after reading an email from Schlaps.  (Doc. #13 at 26).  However, sending an email to a co-worker— particularly one whose contents are not described with any detail—cannot be considered a "recognized hazard" that is likely to cause strokes.  If Klein is attempting to indicate that the cumulative stress of workplace bullying and mistreatment led to his stroke—and the email was simply the final straw—his claim would meet a similar fate because there is no authority suggesting that workplace bullying and co-worker disagreements are encompassed by the

Michigan Occupational Safety and Health Act.  Accordingly, this claim fails as a matter of law.

### e. Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count 5 of his complaint, Klein defines good faith and fair dealing under the Restatement of Contracts, then mentions that these principles are presumed in all transactions arising under the Uniform Commercial Code.  (Doc. # 13 at 27).  Klein then asserts that "Defendant University of Michigan, the Medical Center, and Defendant[]s Harris and Harvey breached the implied covenant of good faith and fair dealing by failing to follow, or failing to enforce, articulated, facially sufficient policies that would have, if followed, prevented these acts of workplace bullying."  *Id.*  This claim fails for a number of reasons.  As Defendants correctly note, 1) the Uniform Commercial Code does not govern employment contracts such as the one between Klein and the University of Michigan, *Neibarger v. Universal Coopr., Inc.*, 439 Mich. 512, 534 (1992), and 2) in Michigan, there is no independent tort action for a breach of an implied covenant of good faith and fair dealing in the employment context.  *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 197 (1991).  (Doc. #15 at 23).

### f. Breach of Contract

In Count 8 of his complaint, Klein alleges a breach of contract merely by listing the elements of a breach of contract claim and then stating: "Defendants University of Michigan, the Medical Center, Harris, and Harvey breached the employment arrangement by their actions and inactions."  (Doc. #13 at 30).  Without specifying what the terms of this employment contract were, how any of the Defendants allegedly breached that contract, or how this resulted in a particular injury, Klein has failed to state a claim for which relief can be granted.  *Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

not do.") (internal citations omitted).

### g.  Loss of Consortium

In Count 9 of his complaint, Klein merely lists the elements of a loss of consortium claim, and states that the Defendants caused this alleged injury.  (Doc. #13 at 31).  As a result, Klein does not state a claim upon which relief can be granted; "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, a formulaic recitation of a cause of action's elements will not do[.]"  *Twombly*, 550 U.S. at 545 (internal citations omitted).  Moreover, as Defendants correctly assert, "[a] claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury."  *Berryman v. K Mart Corp.*, 193 Mich. App. 88, 94 (1992) (citing *Moss v. Pacquing*, 183 Mich. App. 574, 583 (1990)).  (Doc. #15 at 24).  Again, Klein alleges no facts suggesting that a loss of consortium occurred.

### 2.  Immunity

Even if any of the foregoing state law tort claims were supported by factual allegations sufficient to overcome Defendants' motion to dismiss, Defendants would still be entitled to a dismissal of those claims based on government immunity.  In general, "the governmental immunity act provides broad immunity from tort liability to governmental agencies, officials, or employees who exercise or discharge a governmental function."  *Pew v. Michigan State Univ.,* 307 Mich. App. 328, 332 (2014).  Therefore, unless Klein's claims fall within a statutory exception to the immunity granted by law, he fails to state a cognizable claim.  *Modin v. W. Branch Reg'l Med. Ctr.*, No. 320452, 2015 WL 3478034, at *3 (Mich. Ct. App. June 2, 2015). There are six statutory exceptions to governmental immunity: 1) the highway exception, MCL § 691.1402; 2) the motor-vehicle exception, MCL § 691.1405; 3) the public-building exception,

MCL § 691.1406; 4) the proprietary-function exception, MCL § 691.1413; 5) the governmental-hospital exception, MCL § 691.1407(4); and 6) the sewage-disposal-system-event exception, MCL §§ 691.1417(2) and (3). *See Hannay v. Dep't. of Transp.*, 497 Mich. 45, 60 (2014). Here, the only potentially relevant exceptions are the proprietary-function exception and the governmental-hospital exception.

The proprietary-function exception to governmental immunity holds that immunity does not apply to actions arising out of the performance of a "proprietary function," which is defined as "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." MCL § 691.1413. "Therefore, to be a proprietary function, an activity: '(1) must be conducted primarily for the purpose of producing a pecuniary profit; and (2) it cannot be normally supported by taxes and fees.'" *Herman v. Detroit*, 261 Mich. App. 141, 145 (2004) (quoting *Coleman v. Kootsillas*, 456 Mich. 615, 621 (1998)). Klein cannot invoke the proprietary exception to governmental immunity because he fails to plead that the actions giving rise to the suit were "primarily for the purpose of producing a pecuniary profit."

The governmental-hospital exception to governmental immunity which applies only when suit is brought in connection with the provision of "medical care or treatment" also does not aid Klein. MCL § 691.1407(4). While Klein does name the University of Michigan Medical Center as a defendant, this lawsuit concerns employment matters, not medical care or treatment.

For all of these reasons, Klein cannot avoid the immunity doctrine which protects the Defendants from his state law tort claims.

### B. Federal Claims

#### 1. 42 U.S.C. § 1983 Violation

In Count 6 of his complaint, Klein alleges that "Defendants University of Michigan and the Medical Center deprived [him] of his Constitutional rights of Due Process, derivative rights of Life, Liberty, and the Pursuit of Happiness, and Equal Protection Under the Law." (Doc. #13 at 29). Klein further alleges the same against Defendants Harris and Harvey, and claims these defendants also violated his "First Amendment right to associate and Free Speech." *Id.* In their motion to dismiss, Defendants make two arguments. First, Defendants argue the allegations fail to state a claim upon which relief can be granted. Second, Defendants contend that immunity protects them from these claims. Both arguments have merit.

### a.   Klein Failed to State a Claim as a Matter of Law

First, Klein alleges a violation of his due process rights. The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural Due Process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the State did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Klein does not specify whether this lawsuit concerns deprivation of a property interest or a liberty interest.

If Klein is proceeding under a deprivation of a property interest theory, his claim fails because he did not present any basis in state law that provides an entitlement to benefits that he was denied without due process. *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "Property interests protected by the due process clause must be more than abstract desires or attractions to a benefit. The Due Process Clause only protects those interests to which one has a legitimate claim of entitlement." *Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991)

(citations and internal quotation marks omitted). To succeed on a due process claim in the public employment context, a plaintiff must establish: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

The existence of a property interest depends largely on state law. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Government employment amounts to a protected property interest when the employee is "entitled" to continued employment, but neither mere government employment nor an abstract need or desire for continued employment will give rise to such an interest. *Id.* at 577; *Gregory v. Hunt*, 24 F.3d 781, 787 n. 4 (6th Cir. 1994). Rather, a property interest exists and its boundaries are defined by "rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Accordingly, to establish a protected interest in his position at the University of Michigan, Klein was required to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment. Klein makes no averment to the existence of such a property interest, but even if one assumes *arguendo* that he does possess such an interest in his employment, his claim fails because he never alleges that that interest was terminated.

If Klein is proceeding under a deprivation of liberty interest theory, it is presumably based on the meeting he had with Harvey that was posted on Microsoft Outlook. As with the deprivation of property interest claim, this claim lacks merit. The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in his "reputation, good name, honor, and integrity." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989)). That liberty interest is violated when a state actor

"stigmatize[s]" an individual by means of "voluntary, public dissemination of false information" about the individual.  *Id.* at 320 (internal quotation marks omitted).  In order to invoke this constitutional protection, a plaintiff must establish that his injury is tied to "[s]ome alteration of a right or status 'previously recognized by state law.'"  *Quinn*, 293 F.3d at 319.  In the context of public employment, as is the case here, the Sixth Circuit has outlined a 5-part test that a plaintiff must establish in order to prove a due process violation with respect to this interest:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . .  Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . .  Third, the stigmatizing statements or charges must be made public.  Fourth, the plaintiff must claim that the charges made against him were false.  Lastly, the public dissemination must have been voluntary.

*Crosby v. Univ. of Kentucky*, 863 F.3d 545, 555 (6th Cir. 2017).  At a minimum, Klein did not allege that 1) he was terminated, or 2) that any stigmatizing statements were made public. Accordingly, he has not stated a viable deprivation of liberty interest claim and his due process claim fails as a matter of law.

Second, Klein appears to try to assert an equal protection claim, despite offering no explanation of what specific events give rise to this claim.  The Fourteenth Amendment generally demands "that all persons similarly situated should be treated alike."  *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause itself requires that no State may "deny to any person within its jurisdiction the Equal Protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4.

In the public employment context, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Disparate-treatment cases present "the most easily understood type of discrimination," *Teamsters v. United States*, 431 U.S. 324, 335, n. 15 (1977), and occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–986 (1988). A disparate-treatment plaintiff must therefore establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. *Id.* at 986.

Here, Klein does not suggest that he is a part of a protected class, nor does he make any allegation that the way he was treated was the result of discriminatory intent or motive. The only allegations bearing any semblance to unfavorable treatment relates to his work computer allegedly not being fixed as quickly as he desired (Doc. #13 at ¶ 82) ("Plaintiff was being treated differently from other employees with respect to his work equipment"), and being "scolded" by Harvey for being disruptive during the workday. (*Id.* at ¶ 19) ("Although [other employees] raised a similar disturbance in the hallway [another employee] and Plaintiff noticed Harvey would not likewise scold them, rather, often join in their disturbance as well. This demonstrates disparate treatment, without cause."). Klein fails to allege how this allegedly unfavorable treatment was due to class-based discriminatory intent, and additionally fails to demonstrate that he is a member of a protected class. Accordingly, Klein's equal protection claim lacks merit.

Third, Klein asserts a violation of his First Amendment rights. (Doc. #13 at 29). In particular, he alleges violations of his freedom of speech, as well as his right of association. *Id.* In order to establish that Defendants violated Klein's First Amendment right to free speech, Klein must demonstrate that "1) he was disciplined for speech that was directed toward an issue of public concern, and 2) that his interest in speaking as he did outweighed the [public employer's] interest in regulating his speech." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.

2001) (citing *Connick v. Myers*, 461 U.S. 138, 147-50 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  Klein failed to allege that he was ever disciplined for speech that was directed toward an issue of public concern.  As it pertains to the violation of his First Amendment right to associate, Klein was required to allege that he was in fact prevented from sharing his beliefs and ideas with others.  "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."  *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958).  Here, as explained earlier, the only time Klein's speech was addressed was when he was merely told to "quiet down" while being disruptive.  (Doc. #13 at ¶ 19).  Indeed, as he alleges in his brief, he was singled out not for advancing or discussing any particular belief or idea, but rather for being too loud.  *Id.*  Klein was never precluded from *associating*—he was asked to engage in workplace discussions in a work-appropriate tone.  Accordingly, this claim fails as a matter of law.

### b.   Immunity

Klein's § 1983 claims against Defendants in their official capacities also fail as a matter of law.  The doctrine of sovereign immunity is granted by the Eleventh Amendment to the Constitution and bars § 1983 claims for money damages brought against a state or its employees in their official capacity.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984).  Under the Eleventh Amendment, a state can only be held liable in federal court suits (1) if Congress has expressly abrogated immunity by statute, or (2) if the state waives immunity.  *Id.*; *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

Here, the University of Michigan clearly falls under the definition of the state for

purposes of immunity.  *Vargo v. Sauer*, 457 Mich. 49, 71 n.24, 576 N.W.2d 656, 666 (1998) ("[A]s an extension of the state, generally [a state university] is entitled to invoke sovereign immunity."); *Ewing v. Bd. of Regents of the Univ. of Michigan*, 552 F. Supp. 881, 883 (E.D. Mich. 1982) ("[T]he University is a state instrumentality entitled to Eleventh Amendment immunity.").  Likewise, a suit brought against the University of Michigan's employees acting in their official capacities is treated as a suit against the State, thus affording parallel protection. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  Therefore, Klein would have to meet one of the two qualifications to the sovereign immunity doctrine in order to sustain his official capacity claims against the Defendants.  This, however, he cannot do.

First, Congress did not abrogate state sovereign immunity for § 1983 lawsuits.  As Defendants correctly note, the Supreme Court has held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity . . . ."  (Doc. #15 at 10) (citing *Will*, 491 U.S. at 66).  Nor, contrary to Klein's assertion, did the University of Michigan waive its immunity to § 1983 suits merely "[b]ecause [it] has accepted a nearly innumerable amount of federal funding under multiple programs . . ." (Doc. #17 at 9).  First, courts "will give effect to a State's waiver of Eleventh Amendment immunity *only* where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990) (emphasis added).   Second, the law is clear that the "mere receipt of federal funds does not indicate that a state has consented to suit in federal court."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 926 (1985); *Cardinal v. Metrish*, 564 F.3d 794 (6th Cir. 2009) ("general participation in a federal program or the receipt of federal funds is insufficient to waive

sovereign immunity) (citing *Atascadero*, 473 U.S. at 246-247).   Here, whereas Klein failed to cite any authority suggesting that the University ever agreed—by way of express or even implied terms—to waive its immunity to § 1983 suits in return for its receipt of federal funds, Defendants cited numerous cases holding that a state University's mere receipt of federal funds does not waive Eleventh Amendment immunity for § 1983 claims.   (Doc. #21) (citing *Goonewardena v. New York*, 475 F. Supp.2d 310 (S.D.N.Y., 2007) ("[w]hile the acceptance of federal funds by a state entity waives that state's immunity for purposes of Title VI, it does not for purposes of section 1983.")); *See also Cummings v. New York State Mental Health*, No. 1:11-CV-0892 LEK/DRH, 2013 WL 4805748, at *3 (N.D.N.Y. Sept. 9, 2013).

For all of these reasons, Klein's § 1983 claims against Defendants in their official capacities lack merit and should be dismissed.

### 2.   Conspiracy Claim under 42 U.S.C. § 1985

In Count 6 of his complaint, Klein alleges that Schlaps, Brussolo, Seibert, Mello, and Quine "deprived [him of his] Constitutional rights of Due Process, derivative rights of Life, Liberty, and the Pursuit of Happiness, and Equal Protection Under the law, by conspiring with O'Dell and Harvey" in violation of (presumably) 42 U.S.C. § 1985(3), which is titled "Depriving Persons of Rights or Privileges."  (Doc. #13 at 29).  This claim fails as a matter of law.

To succeed on a claim brought pursuant to 42 U.S.C. § 1985(3), "a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  Additionally, the plaintiff must allege that "the conspiracy was

motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) ("To sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it."). Here, Klein merely complains about the manner in which certain of the Defendants treated him in connection with his job performance (as opposed to a deprivation of equal protection), and makes no claim that race or other class-based factors played a role in the challenged conduct.

Moreover, conspiracy claims must be pled with specificity – conclusory allegations are insufficient. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Twombly*, 550 U.S. at 556. Klein's § 1985 claim fails to meet this pleading standard as he avers nothing beyond conclusory allegations that certain of the Defendants "conspired" with others. (Doc. #13 at 29, ¶ 6).

### 3. HIPPA Violation

In Count 7 of his complaint, Klein alleges a HIPPA violation. (Doc. #13 at 29). In addition to the fact that Klein recognizes that HIPAA does not confer a private right of action (Doc. # 17 at 9), Klein's complaint does not allege any facts whatsoever suggesting that a HIPAA violation took place. That is, Klein, does not allege being a patient, or that any information relating to his "past, present, or future physical or mental health or condition" was ever disclosed. 45 C.F.R. §160.103. Accordingly, his HIPPA claim should be dismissed.

### IV.   Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' motion to dismiss **(Doc. #15)** be **GRANTED** and that Klein's complaint be **DISMISSED.**

Dated: February 23, 2018                               /s/ David R. Grand
Ann Arbor, Michigan                                    DAVID R. GRAND
                                                       United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) and (b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation.   *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2018.

/s/ Eddrey O. Butts
EDDREY O. BUTTS
Case Manager